**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| PAUL PONOMARENKO,<br><br>Plaintiff,<br><br>v.<br><br>NATHAN SHAPIRO, et al.,<br><br>Defendants. | Case No. 16-cv-02763-BLF<br><br>**ORDER DENYING DEFENDANT'S MOTION TO QUASH SERVICE OF PROCESS; GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; AND VACATING HEARING**<br><br>[Re: ECF 27] |

Plaintiff Paul Ponomarenko brings this suit against Defendants Project Vegas Mansion ("PVM") and Nathan Shapiro (collectively, "Defendants"), alleging that Defendants engaged in fraudulent conduct that induced him to enter into two separate contracts for personal coaching with them, and that Defendants subsequently breached those contracts. *See generally* Compl., ECF 1. Shapiro moves to quash service of process for failure to serve in accordance with the Federal Rules of Civil Procedure, and moves to dismiss the complaint for lack of personal jurisdiction over him.[1] *See generally* Mot., ECF 27. Pursuant to Civ. L.R. 7-1(b), the Court finds Shapiro's motion suitable for submission without oral argument and hereby VACATES the hearing scheduled for June 22, 2017. For the reasons set forth below, the Court DENIES Defendant's motion to quash service of process and GRANTS Defendant's motion to dismiss for lack of personal jurisdiction WITH LEAVE TO AMEND.

---

[1] Shapiro appears to file this motion on behalf of both PVM and Shapiro. Plaintiff alleges that PVM is a sole proprietorship, LLC, or other corporate form. Compl. ¶ 3. Although Shapiro claims that PVM is "not a business entity of any type," Mot. 6, the Court has no evidence that PVM is not a corporation. Accordingly, because a corporation cannot be represented pro se, the Court construes the motion to be on behalf of Shapiro alone. *In re Bigelow*, 179 F.3d 1164, 1165 (9th Cir. 1999).

## I. BACKGROUND

Plaintiff alleges the following facts: Ponomarenko was invited to attend and did attend Defendants' personal coaching seminar in San Francisco on February 15–18, 2013, where he was introduced to Defendants, including Shapiro. Compl. ¶¶ 12–14. Ponomarenko paid $349 to attend the event. *Id.* ¶ 13. Plaintiff later attended an "in-field" coaching session, where Defendants took him and several other individuals on "training sessions." *Id.* ¶ 14. After this session, Defendants invited Ponomarenko to join them at a third event for further demonstration of their personal coaching methods. *Id.* ¶ 15. At some point thereafter, Defendants induced Ponomarenko to consider a long-term business relationship with them for personal coaching. *Id.* ¶ 16.

At a subsequent meeting in California, Defendants represented that as a part of any agreement, Ponomarenko would receive structured personal coaching with substantial, regular, and organized feedback. *Id.* ¶ 17. The services were to be provided in both California and Nevada, and by PVM through Shapiro and/or another individual who represented himself to be working on behalf of PBCM and to be a business partner of Shapiro. *Id.* After this meeting, Ponomarenko flew to Las Vegas, Nevada to finalize the agreement. *Id.* ¶ 18.

While in Las Vegas, Ponomarenko and Defendants executed an agreement ("First Agreement") for PVM to provide a specific number of hours and sessions of personal communication and presentation coaching. *Id.* ¶ 19. The First Agreement obligated Ponomarenko to make an initial down payment of $25,000. *Id.* ¶ 20. Ponomarenko paid Shapiro $5,000 while he was in Las Vegas, and paid an additional $15,000 a few days later. *Id.* Ponomarenko also paid $5,000 to another individual who was represented to be one of PVM's agents and Shapiro's business partner. *Id.* Pursuant to the First Agreement, Ponomarenko was to make the remainder of the payments in regular intervals during the course of the training period. *Id.*

From the time he executed the First Agreement through January 2014, Ponomarenko repeatedly and regularly traveled between California and Nevada to attend the coaching sessions. *Id.* ¶ 22. Occasionally, training sessions were held in other cities, such as New York and Chicago. *Id.* Ponomoarenko claims that the personal coaching sessions lacked the promised structure and

many were conducted "in a party like setting," at his expense. *Id.* ¶ 23. Growing frustrated with this, Ponomarenko reached out to PVM's agent, who reassured him that they would address the issues. *Id.* ¶ 24.

In January 2014, PVM's agent proposed a second agreement, whereby the agent would move to San Francisco so that Ponomarenko did not have to regularly travel to attend the training sessions. *Id.* ¶ 25. Thereafter, Ponomarenko and PVM's agent entered into second agreement ("Second Agreement"), whereby Ponomarenko agreed to pay $99,000 to enroll in an advanced personal coaching program. *Id.* In addition to the enrollment cost, Ponomarenko was to cover all of the agent's travel expenses for the duration of the Second Agreement and a short-term lease on an apartment for PVM's agent in San Francisco. *Id.* Shapiro was not involved in the Second Agreement. *Id.*

On February 20, 2014, Ponomarenko paid PVM's agent $40,000, consisting of a $23,500 payment on the First Agreement and a $16,500 down payment for the Second Agreement. *Id.* ¶ 27. PVM's agent never delivered on the promise to provide advanced coaching services. *Id.* ¶ 28. Plaintiff believes that these payments were used to "fund a San Francisco/Vegas lifestyle" for PVM's agent. *Id.* Nevertheless, in January 2016, Shapiro contacted Ponomarenko and claimed that Ponomarenko had not paid the $23,500 due on the First Agreement. *Id.* ¶ 27.

Ultimately, Ponomarenko terminated the Second Agreement in November 2014. *Id.* ¶ 29. Upon termination, PVM's agent demanded that Ponomarenko pay the full amount of the coaching fee, as well as additional expenses before PVM's agent agreed to leave the San Francisco apartment Ponomarenko was paying for. *Id.* Ponomarenko also paid expenses to terminate the lease once PVM's agent left the premises. *Id.* In all, Ponomarenko expended over $125,000.

Ponomarenko filed this suit in May 2016. *See generally* Compl. He asserts six claims against Defendants: (1) breach of contract; (2) intentional misrepresentation; (3) negligent misrepresentation; (4) false promise; (5) breach of the covenant of good faith and fair dealing; and (6) violation of the California Business and Professions Code § 17200 ("UCL"). *See generally id.* Shapiro moves to quash service of process for failure to serve in accordance with the Federal Rules of Civil Procedure, and moves to dismiss the Complaint for lack of personal jurisdiction

1    over him. *See generally* Mot.

**II. MOTION TO QUASH SERVICE OF PROCESS**

**A. Legal Standard**

The Court lacks jurisdiction over defendants who have not been properly served. *SEC v. Ross*, 504 F.3d 1130, 1138–39 (9th Cir. 2007). Accordingly, Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5) permit a court to dismiss an action for insufficiency of service of process. Fed. R. Civ. P. 12(b)(4)–(5). Rule 12(b)(4) enables the defendant to challenge the substance and form of the summons, and 12(b)(5) allows the defendant to attack the manner in which service was, or was not, attempted. When the validity of service is contested, the burden is on the plaintiff to prove that service was valid under Rule 4. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). If the plaintiff is unable to satisfy this burden, the Court has the discretion to either dismiss the action or retain the action and quash the service of process. *Lowenthal v. Quicklegal, Inc.*, No. 16-cv-3237, 2016 WL 5462499, at *14 (N.D. Cal. Sept. 28, 2016). "Dismissals for defects in the form of summons are generally disfavored." *U.S.A. Nutrasource, Inc. v. CNA Ins. Co.*, 140 F. Supp. 2d 1049, 1052 (N.D. Cal. 2001).

**B. Discussion**

Rule 4 of the Federal Rules of Civil Procedure allows service on an individual within a judicial district of the United States by the methods outlined in the rule itself, as well as by the methods permitted under the laws of the forum state (here, California) and the state in which service is attempted (New York). Fed. R. Civ. P. 4(e). Here, neither party contends that service complied with California law. Accordingly, for service to be proper, it must have complied with New York law.

Shapiro argues that the manner of service was improper because he is not a citizen of New York, and thus, could not be served there. Mot. 3. Shapiro cites to the Complaint, in which Ponomarenko alleges that Shapiro is a citizen of Clark County, Nevada. *Id.* Contrary to Shapiro's suggestion, however, the propriety of service does not depend on the defendant's domicile or residence. *See* Fed. R. Civ. P. 4; *see also* Opp'n 4, ECF 29. Moreover, even if the propriety of service were a defendant's domicile or residence, in opposition to Shapiro's motion, Plaintiff declares that

4

investigation after the Complaint was filed revealed that Shapiro was actually a resident of New York. *See* Opp'n; Indrajana Decl. ¶¶ 7–10, ECF 29-3. Accordingly, Shapiro's argument is unavailing.

The Court must next determine whether service was proper pursuant to New York law. In addition to several other methods, New York permits service on a natural person where personal or substituted service cannot be made with due diligence, "by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and [within 20 days of affixing the summons] by . . . mailing the summons to such person at his or her last known residence . . . ." N.Y. C.P.L.R. § 308(4). If this method is chosen, service "shall be complete ten days after . . . filing" of proof of service with the clerk of the court. *Id.*

Here, after ascertaining what he believed to be Shapiro's residence, Plaintiff engaged a process server that attempted to personally serve Shapiro on thirteen separate occasions over the course of several months. Indrajana Decl. ¶¶ 11–13, 26–27. After those attempts, on November 29, 2016, the process server nailed a copy of the Summons and the Complaint to the door of Shapiro's New York address and also mailed a copy of the same to Shapiro's New York address via USPS First Class Certified Mail, with the words "Personal and Confidential" on the envelope. *Id.* ¶ 26; *see also* Ex. 11 to Indrajana Decl., ECF 29-4. Ponomarenko filed a proof of service detailing this method of service on November 30, 2016. *See* ECF 25. Plaintiff contends this is sufficient under New York law. Opp'n 3–4. The Court agrees, and thus finds that service was perfected on December 10, 2016. Accordingly, the Court DENIES Shapiro's motion to quash service of process pursuant to Fed. R. Civ. P. 12(b)(5).

### III. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

#### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to seek dismissal of an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (internal quotation marks and citation omitted). "[T]he plaintiff cannot simply rest on the bare allegations of its complaint." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotation marks and citation

omitted). However, uncontroverted allegations in the complaint are accepted as true, and factual disputes created by conflicting affidavits are resolved in the plaintiff's favor. *Id.*

Where no applicable federal statute governs personal jurisdiction, "the law of the state in which the district court sits applies." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Id.* "[D]ue process requires that the defendant 'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Ranza*, 793 F.3d at 1068 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks and citation omitted). "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Id.* at 1068. "General jurisdiction exists when the defendant's contacts "are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (internal quotation marks and citation omitted). A nonresident that is subject to the court's general jurisdiction may be sued for claims "arising from dealings entirely distinct" from the forum-related activities. *Id.* (internal quotation marks and citation omitted) (emphasis omitted). In contrast, specific jurisdiction exists when the defendant's contacts with the forum state are more limited but the plaintiff's claims arise out of or relate to those contacts. *Id.* at 754. General jurisdiction is referred to as "all-purpose" jurisdiction whereas specific jurisdiction is referred to as "case-specific" or "case-linked" jurisdiction. *Ranza*, 793 F.3d at 1069 n.2 (citations omitted).

**B. General Personal Jurisdiction**

Shapiro argues that this Court cannot exercise general personal jurisdiction over him because Ponomarenko alleges that Shapiro is a resident of Clark County, Nevada. Mot. 4. Shapiro further contends that he does not have sufficient contacts with California to satisfy the constitutional requirements. *Id.* Despite this allegation, Ponomarenko argues that the Court may exercise general personal jurisdiction over Shapiro because he has systematic and continuing contact with California residents. Opp'n 7.

General jurisdiction exists when the defendant's contacts "are so continuous and systematic as to render [him] essentially at home in the forum State." *Daimler*, 134 S. Ct. at 761 (internal quotation marks and citation omitted). A nonresident that is subject to the court's general jurisdiction may be sued for claims "arising from dealings entirely distinct" from the forum-related activities. *Id.* (internal quotation marks and citation omitted) (emphasis omitted). "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Id.* at 760. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.*

Ponomarenko acknowledges that Shapiro is not a California resident but cites the following facts in an attempt to demonstrate that Shapiro has continuous and systematic contacts with California: (1) Shapiro advertised and organized multiple events for his business in California and (2) Shapiro was present and doing business in California when he induced Ponomarenko to attend events and purchase lessons and services that he never provided. Opp'n 7.

None of these weighs in favor of a finding that Shapiro is subject to general jurisdiction in California. Rather the focus of the inquiry is the domicile of the parties at the time the action is filed. *Repp v. Or. Health Scis. Univ.*, 972 F. Supp. 546, 549 n.2 (D. Or. 1997). Shapiro's interactions with Ponomarenko, alone, also cannot render him "essentially at home in California. *See Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (holding that "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders"). As such, the interactions between the parties regarding Defendants' provision of personal coaching services are not sufficient to subject Shapiro to general jurisdiction in California.

### C. Specific Personal Jurisdiction

The Ninth Circuit has established a three-prong test for determining whether a non-resident defendant is subject to specific personal jurisdiction in a forum:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

7

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff asserting the existence of jurisdiction bears the burden of proof with regard to the first two elements as to each separate defendant. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008); *Harris Rutsky & Co.*, 328 F.3d at 1129–30. If the first two elements are satisfied, the burden then shifts to the defendants to "present a compelling case" that exercising jurisdiction would be unreasonable. *See, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

Under the first prong of the specific jurisdiction test, Ponomarenko must establish that Shapiro either purposefully availed himself of the privilege of conducting activities in California or purposefully directed his activities toward California. *Schwarzenegger*, 374 F.3d at 802. The Ninth Circuit "often use[s] the phrase 'purposeful availment,' in shorthand fashion, to include both purposeful availment and purposeful direction, but availment and direction are, in fact, two distinct concepts." *Id.* (citations omitted). Purposeful availment analysis is most often used for claims sounding in contract, and purposeful direction is most often used for claims sounding in tort. *Id.*

Ponomarenko alleges claims against Shapiro sounding in both contract and tort. *See generally* Compl. Shapiro urges this Court to apply the "purposeful availment" test to all of the claims against him. Mot. 7. In opposition, Ponomarenko suggests that the Court should instead apply the "purposeful direction" test. Opp'n 7.

In several decisions, the Ninth Circuit has applied the purposeful availment test to suits involving both contract and tort claims where the tort claims arise out of the plaintiff's contractual relationship with the defendant. The Ninth Circuit in *Sher v. Johnson* applied a purposeful availment analysis to a complaint alleging both contract and tort claims in a legal malpractice suit. 911 F.2d 1357, 1362–64 (9th Cir. 1990); *id.* at 1362 (stating that "[a]lthough some of [plaintiff]'s claims sound in tort, all arise out of [plaintiff]'s contractual relationship with the defendants"); *see also Boschetto*, 539 F.3d at 1016–19 (applying the purposeful availment test to a complaint that

8

1  contained four state law causes of action for breach of contract, misrepresentation, fraud, and
2  violation of the California Consumer Protection Act); *HK China Grp. v. Beijing United Auto. &*
3  *Motorcycle Mfg. Corp.*, 417 F. App'x 664, 665–66 (9th Cir. 2011) (applying the purposeful
4  availment test to a complaint that included claims for breach of contract and fraud as "the action
5  sounds primarily in contract").

6  Ponomarenko's claims for intentional and negligent misrepresentation, false promise, and
7  unfair competition are premised on his alleged contractual relationship with Shapiro. With respect
8  to the claims for misrepresentation, Ponomarenko alleges that Defendants represented in the First
9  and Second Agreement that they would perform coaching services, among other representations,
10 that were not true. *See* Compl. ¶¶ 51, 58. Similarly, Ponomarenko's false promise claim is based
11 on promises that Defendants allegedly set forth in the First and Second Agreements but did not
12 fulfill. *See id.* ¶ 67–72. Finally, Plaintiff's claim under the UCL is based on Defendants' inducing
13 him into paying for the services that were the object of the Agreements and accepting his
14 payments under the Agreements without intending to provide the contracted for services. *Id.*¶ 79.
15 Therefore, these claims are premised on the contract. As such, Ponomarenko must satisfy the
16 purposeful availment test to meet the burden of establishing that the Court has specific personal
17 jurisdiction over Shapiro. *See Boschetto*, 539 F.3d at 1016; *Sher*, 911 F.2d at 1362.

### i. Purposeful Availment

The purposeful availment test requires that "'in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "A defendant has purposely availed himself of the benefits of a forum if he "'deliberately' has engaged in significant activities within a State, . . . or has created 'continuing obligations' between himself and residents of the forum." *Id.* at 475–76 (internal citation omitted). Further, "[p]urposeful availment requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." *Gray & Co. v. Firstenberg Machinery Co.*, 913 F.2d 758, 760 (9th Cir.1990). "This 'purposeful availment' requirement ensures that a defendant will not be haled

into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts" or of a unilateral activity of another party or a third person. *Burger King*, 471 U.S. at 474–75.

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. However, "an individual's contract with an out-of-state party *alone* [cannot] automatically establish sufficient minimum contacts." *Burger King*, 471 U.S. at 478 (emphasis in original). In context of claims arising from a contract, such as the case here, a "showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there," *Schwarzenegger*, 374 F.3d at 802, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (quoting *Burger King*, 471 U.S. at 479).

Here, Ponomarenko argues and alleges that Defendants organized, advertised, and held several events throughout California. Mot. 8; *see also* Compl. ¶¶ 12–41. However, the only allegation specific to Shapiro's conduct connected to California is that he was listed as the primary contact for the February 2013 event in San Francisco and that Ponomarenko met Shapiro at the event. Compl. ¶¶ 12–14. There are no allegations that Shapiro solicited Ponomarenko's business in California or that Shapiro performed on the contract in California; all of those sorts of allegations refer to Defendants collectively. *See, e.g.*, id. ¶ 16 ("Defendants further induced Plaintiff to consider a long term business relationship with them[.]"); *id.* ¶ 17 ("At a subsequent meeting, also held in California, Defendants represented to Plaintiff . . . ."); *id.* ¶ 26 (alleging that Defendant PVM's agent moved to San Francisco and that "no communications were made by Defendant Shapiro at that time"); *see also* Ponomarenko Decl. ¶¶ 3–5, ECF 29-2. Moreover, although Ponomarenko's counsel declares that Shapiro actively marketed his services and organized major events in California, the evidence submitted does not connect Shapiro to the event. Indrajana Decl. ¶ 5; Ex. 1 to Indrajana Decl., ECF 29-4. Accordingly, the Court cannot conclude that Shapiro purposefully availed himself of the privilege of doing business in

10

California.

### ii. Arising Out of Forum-Related Activities and Determining Whether the Exercise of Jurisdiction Would Be Reasonable

Because Plaintiff has not satisfied his burden of proving that Shapiro purposefully availed himself of the privilege of doing business in California, the Court does not address the final prongs of the *Schwarzenegger* personal jurisdiction inquiry.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's motion to quash service of process is DENIED and the motion to dismiss for lack of personal jurisdiction is GRANTED. The Complaint is hereby DISMISSED WITH LEAVE TO AMEND. Plaintiff may amend to allege Shapiro's contacts with California, an agency relationship between Shapiro and PVM or "PVM's agent," and/or that PVM has no corporate identity separate from Shapiro.

Plaintiff shall file any amended pleading on or before **May 31, 2017**. Failure to meet the deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal of Plaintiff's claims with prejudice.

Dated: May 3, 2017

_____
BETH LABSON FREEMAN
United States District Judge