SANJIV N SINGH, A PROFESSIONAL LAW CORP.
Sanjiv N. Singh, Esq. (SBN 193525)
1650 S. Amphlett Blvd. Suite 220
San Mateo, CA 94402
Phone: (650) 389-2255
Email: ssingh@sanjivnsingh.com

INDRAJANA LAW GROUP, A PROFESSIONAL LAW CORP.
Michael Indrajana. (SBN 258329)
1650 S. Amphlett Blvd. Suite 220
San Mateo, CA 94402
Phone: (650) 597-0928
Email: michael@indrajana.com

Attorneys for Plaintiff Paul Ponomarenko and Third-Party Defendant Summit Estate, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| **PAUL PONOMARENKO, an individual,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**PROJECT VEGAS MANSION, corporate entity of unknown form, NATHAN SHAPIRO, an individual; and DOES 1 through 50,**<br><br>    **Defendants.**<br>―――――――――――――――――――<br>**NATHAN SHAPIRO, an individual,**<br><br>    **Counterclaimant,**<br><br>    **v.**<br><br>**PAUL PONOMARENKO, an individual, DOES 1 through 50 and ROE business entities 51-100,**<br><br>    **Counterdefendants.**<br>―――――――――――――――――――<br>**NATHAN SHAPIRO, an individual,**<br><br>**Third Party Plaintiff,** | **Case No.: 5:16-CV-02763-BLF**<br><br>**PLAINTIFF PAUL PONOMARENKO AND THIRD PARTY DEFENDANT SUMMIT ESTATE'S JOINT MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM AND THIRD PARTY COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>**Date:    September 7th, 2017**<br>**Time:    9:00 AM**<br>**Dept:    Courtroom 6, 4th Floor**<br>**Judge:  Honorable Beth Labson**<br>           **Freeman** |

1   vs.

2   **SUMMIT ESTATE, INC. DBA SUMMIT
    ESTATE RECOVERY CENTER, a**

3

4   **California corporation, DOES 1 through 50
    and ROE business entities 51 through 100,**

5   **Third Party Defendants.**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.    INTRODUCTION..........................................................................................................1

II.    BACKGROUND. ........................................................................................................2

  A.   Procedural Background..........................................................................................2

  B.   Relevant Factual Allegations ................................................................................3

III.   ARGUMENT .............................................................................................................5

  A.   Shapiro Fails to State Any Causes of Action Against Summit Estate In His Third Party Complaint And No Alter Ego Exists Between Summit Estate And Ponomarenko..........................6

  B.   Shapiro's Breach of Contract Claim Should be Dismissed. .................................8

    1.   Shapiro Does Not Plead Any Facts Supporting His Claim For Breach of Contract Because Ponomarenko Had Already Fully Paid Shapiro And/Or PVM. .........................................8

    2.   Summit Estate Is Not A Party To The Contract. ....................................................9

  C.   Shapiro Fails To State A Claim For Breach of Confidentiality............................10

    1.   Shapiro Does Not Plead Any Facts Supporting His Claim For Breach of Confidentiality. 10

    2.   Shapiro's Relief For Damages Is Highly Speculative........................................10

  D.   Shapiro Fails To State A Claim For Breach of Non-Compete Provision. .............11

  E.   Shapiro Fails To State A Claim For Tortious Interference With Prospective Economic Advantage Against All Responsible Parties. ................................................................11

    3.   Ponomarenko Is A Party To The Contract And Therefore Cannot Be Liable to Shapiro for IIPEA. ...............................................................................................12

    4.   Shapiro Fails to Allege Sufficient Facts Against Summit Estate for IIPEA. .......................12

  F.   Shapiro Fails To State A Claim For Breach Of The Nevada Uniform Deceptive Trade Practices Act. ................................................................................................13

  G.   Shapiro Fails to State A Claim For Civil Conspiracy..........................................13

  H.   Shapiro Fails To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing. ................................................................................................16

i

PLAINTIFF PAUL PONOMARENKO AND THIRD PARTY DEFENDANT SUMMIT ESTATE'S JOINT MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM AND THIRD PARTY COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)
CASE NO. 5:16-CV-02763-BLF

1.    Shapiro Fails To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing. ................................................................................................................ 16

2.    Summit Estate Is Not A Party To The Contract And Therefore The Cause Of Action Does Not Apply To Summit Estate. ......................................................................................... 17

IV.    CONCLUSION .......................................................................................................... 17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anchom, Ltd. v. Smeding,*
623 F.3d 1248 (9th Cir. 2010) ...........................................................................6

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) ..............................................................4, 9, 11, 13

*Bell Atlantic v. Twombly,*
550 U.S. 554 (2007) ...................................................................4, 5, 9, 13

*Daly v. United Healthcare Ins. Co.,*
2010 WL 4510911 (N.D. Cal. Nov. 1, 2010) ...........................................14

*Schreiber Distrib. Co. v. Serve-Well Furniture Co.,*
806 F.2d 1393 (9th Cir. 1986) ...............................................................11

*Sprewell v. Golden State Warriors,*
266 F.3d 979 (9th Cir. 2001) ...................................................................5

*Starr v. Baca,*
652 F.3d 1202 (9th Cir. 2011) ...................................................................5

*Swartz v. KPMG LLP,*
476 F.3d 756 (9th Cir. 2007) .................................................................12

## STATE CASES

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,*
7 Cal. 4th 503 (1994) ...........................................................................11, 12

*Arei II Cases,*
216 Cal. App. 4th 1004 (2013) ...............................................................12

*Choate v. Cnty. of Orange,*
86 Cal. App. 4th 312 (2000) ...................................................................12

*Cisco Sys., Inc. v. STMicroelecs., Inc.,*
77 F. Supp. 3d 887 (N.D. Cal. 2014) .....................................................12

PLAINTIFF PAUL PONOMARENKO AND THIRD PARTY DEFENDANT SUMMIT ESTATE'S JOINT MOTION TO DISMISS DEFENDANT'S
COUNTERCLAIM AND THIRD PARTY COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)
CASE NO. 5:16-CV-02763-BLF

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.,*
   11 Cal. 4th 376 (1995) ............................................................................10, 11

*Edwards v. Arthur Andersen LLP,*
   44 Cal.4th 937 (2008) ....................................................................................10

*Filip v. Bucurenciu,*
   129 Cal. App. 4th 825 (2005) ........................................................................13

*Foley v. Interactive Data Corp.,*
   47 Cal. 3d 654, 683 (1988) ............................................................................13

*Guz v. Bechtel Nat'l Inc.,*
   24 Cal. 4th 317, 349 (2000) ......................................................................13, 14

*Harris v. Rudin, Richman & Appel,*
   74 Cal.App.4th 299 (1999) ..............................................................................7

*Hennessey's Tavern Inc. v. Am. Air. Filter Co.,*
   204 Cal. App. 3d 1351 (2d Dist. 1988) ............................................................6

*Kidron v. Movie Acquisition Corp.,*
   40 Cal. App. 4th 1571 (1995) ........................................................................12

*Korea Supply Co. v. Lockheed Martin Corp.,*
   29 Cal. 4th 1134 (2003) .................................................................................10

*Latona v. Aetna U.S. Healthcare Inc.,*
   82 F.Supp. 2d 1089, 1093(C.D. Cal. 1999) ...................................................10

*Mesler v. Bragg Mgmt. Co.,*
   39 Cal. 3d 290 (1985) ......................................................................................6

*Metro Traffic Control, Inc. v. Shadow Traffic Network,*
   22 Cal. App. 4th 853, 859 (1994) ....................................................................9

*Mid–Century Ins. Co. v. Gardner,*
   9 Cal. App. 4th 1205 (3d Dist. 1992) ..............................................................6

*Neilson v. Union Bank of Cal.*, N.A.,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) ...........................................................6

*Nein v. HostPro, Inc.,*
    174 Cal. App. 4th 833, 853 (2009) ........................................................14

*Oasis West Realty, LLC v. Goldman,*
    51 Cal.4th 811 (2011) .........................................................................7

*Racine & Laramie v. Dept of Parks & Recreation,*
    11 Cal.App.4th 1026 (1992) ...............................................................15

*Sales Corp. v. Olsen,*
    80 Cal. App. 3df 645 (1978) ...............................................................12

*Sonora Diamond Corp. v. Superior Court,*
    83 Cal. App. 4th 523, 538 (5th Dist. 2000) ..........................................6

*Vestar Development II, LLC. v. General Dynamics Corp.,*
    249 F.3d 958 (9th Cir. 2001) ...............................................................8

*Wasco Prods., Inc. v. Southwall Tech., Inc.,*
    435 F.3d 989 (9th Cir. 2006) ..............................................................12

*Younan v. Equifax, Inc.,*
    111 Cal. App. 3d 498, 511 n.9 (1980) ...........................................11, 12

**FEDERAL STATUTES**

Fed. R. Civ. P. 8(a)(2) ............................................................................1, 4

Fed. R. Civ. P. 8(a)(3) .................................................................................1

Fed. R. Civ. P. 9(b) ..........................................................................5, 11, 12

Fed. R. Civ. P. 12(b)(6) .............................................................................4, 5

Fed. R. Civ. P. 14(a)(1) ...............................................................................6

**STATE STATUTES**

Cal. Bus. & Prof. Code § 16600.....................................................................9

Cal. Civ. Code § 3300....................................................................................9

Cal. Civ. Code § 3301………………………………………………….................9

**TREATISES**

Restatement (Second) of Contracts § 205.......................................................13

1

### NOTICE OF MOTION AND MOTION

2

TO DEFENDANT NATHAN SHAPIRO:

3

PLEASE TAKE NOTICE THAT at 9:00 A.M. on September 7th, 2017, or as soon thereafter

4

as counsel may be heard, in Courtroom 6, 4th Floor of this Court, located at 280 South First Street,

5

San Jose, California, before the Honorable Beth Labson Freeman, Plaintiff Paul Ponomarenko and

6

Third-Party Defendant Summit Estate will and hereby move this Court for an Order dismissing

7

Defendant's Cross-Complaint ("Cross-Complaint") on the grounds that it fails to state a claim pursuant

8

to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. This motion is based on this Notice

9

of motion and Motion, the following Memorandum of Points and Authorities, the pleadings and papers

10

on file in this action, any matters of which the Court may or must take judicial notice, any evidence or

11

argument presented at the hearing on the motion, and any other matters the Court deems proper.

12

13

### MEMORANDUM OF POINTS AND AUTHORITIES

14

**I.   INTRODUCTION**

15

This is a case about a breach of contract and fraud in which Plaintiff Paul Ponomarenko was

16

promised life and motivational coaching services but was never provided such services by the

17

Defendants.

18

In his counterclaim to Ponomarenko, Defendant Shapiro asserts seven causes of action against

19

Plaintiff Paul Ponomarenko: (1) Breach of Contract, (2) Breach of Confidentiality, (3) Breach of Non-

20

Compete Provision, (4) Tortious Interference With Prospective Economic Advantage, (5) Breach of

21

Nevada Uniform Deceptive Trade Practices Act, (6) Civil Conspiracy, (7) Breach of Implied Covenant

22

of Good Faith and Fair Dealing. Shapiro did not allege any causes of action against Summit Estate in

23

his Third-Party Complaint against Summit Estate.

24

However, both Shapiro's counterclaim against Ponomarenko and his third-party complaint

25

against Summit Estate fail to meet the general pleading requirements set forth in Rule 8 of Federal

26

Rules of Civil Procedure. In the counterclaim, Shapiro failed to state a demand for the relief sought as

27

required by rule 8(a)(3). In the third-party complaint, Shapiro literally did not include any causes of

28

action against Summit Estate, other than vague allegations that Summit Estate is the alter ego of

---

Ponomarenko as required by rule 8(a)(2).

On their merits, All of Defendant's counterclaims and third-party claims fail for the following reasons:

1. Shapiro has failed to allege any causes of action in his Third-Party Complaint against Summit Estate and thereby has now waived the right to bring a third-party complaint;

2. Ponomarenko has fully performed its contractual obligations when he paid his fees to either Shapiro or PVM's agents;

3. Summit Estate is not a party to the contract;

4. Shapiro has not plead sufficient facts to allege a breach of confidentiality against either Ponomarenko or Summit Estate;

5. Shapiro's Non-Compete Claim against Plaintiff fails as a matter of law because Non-Compete Agreements are void as a matter of law in California;

6. Shapiro has not plead sufficient facts to allege a tortious interference of prospective economic advantage against either Ponomarenko or Summit Estate;

7. Shapiro has not plead sufficient facts to allege a breach of the Nevada Uniform Deceptive Trade Practices Act;

8. Shapiro fails to state a claim for civil conspiracy;

9. Shapiro fails to state a claim for breach of implied covenant of good faith and fair dealing.

## II.   BACKGROUND.

### A.   Procedural Background

Plaintiff Ponomarenko filed this suit in May 2016, asserting six claims against Defendants: (1) breach of contract; (2) intentional misrepresentation; (3) negligent misrepresentation; (4) false promise; (5) breach of the covenant of good faith and fair dealing; and (6) violation of the California Business and Professions Code § 17200 ("UCL"). Dkt. No. 1. Shapiro moved to quash service of process for failure to serve in accordance with the Federal Rules of Civil Procedure, and moved to dismiss the Complaint for lack of personal jurisdiction Dkt. No. 27.

The Court denied Shapiro's motion to quash service and granted his motion to dismiss for lack of personal jurisdiction with leave to amend. Dkt. No. 42. Plaintiff subsequently filed his First Amended Complaint ("FAC") on May 30th, 2017. Dkt. No. 43.

Shapiro then filed an improperly noticed Motion to Change Venue on the eve of the Case Management Conference hearing dated June 22, 2017[1]. Dkt. 49. Shapiro later withdrew the Motion. Dkt. 52.

On June 30th, 2017, Shapiro filed his answer, cross-complaint against Plaintiff Ponomarenko, and a third-party complaint against Summit Estate. Dkt. 56.

**B.  Relevant Factual Allegations**

Plaintiff alleges the following facts:  Ponomarenko was invited to attend and did attend Defendants' personal coaching seminar in San Francisco on February 15–18, 2013, where he was introduced to Defendants, including Shapiro. First Amended Compl. ¶¶ 12–14. Ponomarenko paid $349 to attend the event. *Id.* ¶ 13. Plaintiff later attended an "in-field" coaching session, where Defendants took him and several other individuals on "training sessions."  *Id.* ¶ 15. After this session, Defendants invited Ponomarenko to join them at a third event for further demonstration of their personal coaching methods. *Id.* ¶ 17. At some point thereafter, Defendants induced Ponomarenko to consider a long-term business relationship with them for personal coaching. *Id.* ¶ 17.

At a subsequent meeting in California, Defendants represented that as a part of any agreement, Ponomarenko would receive structured personal coaching with substantial, regular, and organized feedback. *Id.* ¶ 19. The services were to be provided in both California and Nevada, and by PVM through Shapiro and/or another individual who represented himself to be working on behalf of PBCM and to be a business partner of Shapiro. *Id.* After this meeting, Ponomarenko flew to Las Vegas, Nevada to finalize the agreement. *Id.* ¶ 20.

While in Las Vegas, Ponomarenko and Defendants executed an agreement ("First Agreement") for PVM to provide a specific number of hours and sessions of personal communication

---

[1] The Motion was later withdrawn because Defendant Shapiro failed to properly redact the attachments to the Motion containing intensively private information regarding Plaintiff Ponomarenko, such that Plaintiff's counsel had to call ECF help desk to temporarily block access to the document and addressed the issue with the Court during the Case Management Conference hearing.

and presentation coaching. *Id.* ¶ 21. The First Agreement obligated Ponomarenko to make an initial down payment of $25,000. *Id.* Ponomarenko paid Shapiro $5,000 while he was in Las Vegas, and paid an additional $15,000 a few days later. *Id.* Ponomarenko also paid $5,000 to another individual who was represented to be one of PVM's agents and Shapiro's business partner. *Id.* Pursuant to the First Agreement, Ponomarenko was to make the remainder of the payments in regular intervals during the course of the training period. *Id.*

From the time he executed the First Agreement through January 2014, Ponomarenko repeatedly and regularly traveled between California and Nevada to attend the coaching sessions. *Id.* ¶ 23. Occasionally, training sessions were held in other cities, such as New York and Chicago. *Id.* Ponomarenko claims that the personal coaching sessions lacked the promised structure and many were conducted "in a party like setting," at his expense. *Id.* ¶ 24. Growing frustrated with this, Ponomarenko reached out to PVM's agent, who reassured him that they would address the issues. *Id.* ¶ 25.

In January 2014, PVM's agent proposed a second agreement, whereby the PVM agent would move to San Francisco so that Ponomarenko did not have to regularly travel to attend the training sessions. *Id.* ¶ 26. Thereafter, Ponomarenko and PVM's agent entered into second agreement ("Second Agreement"), whereby Ponomarenko agreed to pay $99,000 to enroll in an advanced personal coaching program. *Id.* In addition to the enrollment cost, Ponomarenko was to cover all of the agent's travel expenses for the duration of the Second Agreement and a short-term lease on an apartment for PVM's agent in San Francisco. *Id.* Shapiro was not involved in the Second Agreement. *Id.*

On February 20, 2014, Ponomarenko paid PVM's agent $40,000, consisting of a $23,500 payment on the First Agreement and a $16,500 down payment for the Second Agreement. *Id.* ¶ 28. PVM's agent never delivered on the promise to provide advanced coaching services. *Id.* ¶ 29. Plaintiff believes that these payments were used to "fund a San Francisco/Vegas lifestyle" for PVM's agent. *Id.* Nevertheless, in January 2016, Shapiro contacted Ponomarenko and claimed that Ponomarenko had not paid the $23,500 due on the First Agreement. *Id.* ¶ 28.

Ultimately, Ponomarenko terminated the Second Agreement in November 2014. *Id.* ¶ 30. Upon termination, PVM's agent demanded that Ponomarenko pay the full amount of the coaching fee, as well as additional expenses before PVM's agent agreed to leave the San Francisco apartment

1    Ponomarenko was paying for. *Id.* Ponomarenko also paid expenses to terminate the lease once PVM's

2    agent left the premises. *Id*. In all, Ponomarenko expended over $125,000. *Id at ¶¶* 31-42.

3

4    **III.   ARGUMENT**

5         A party may move to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) if, from

6    the face of the complaint, a plaintiff fails to state a claim upon which relief can be granted. Fed. R.

7    Civ. P. 12(b)(6). Rule 12(b)(6) requires the Court to take all allegations in the relevant complaint as

8    true, and construe all inferences from them in the light most favorable to them. *Cahill v. Liberty Mut.*

9    *Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). While a complaining party does not need detailed factual

10   allegations, he must nonetheless "provide the grounds of his entitle[ment] to relief . . . [which] requires

11   more than labels and conclusions, and a formulaic recitation of a cause of action will not do . . . Factual

12   allegations must be enough to raise a right to relief above the speculative level . . ." *Bell Atl. Corp. v.*

13   *Twombl*y, 550 U.S. 544, 555 (2007) (citations omitted). The court need not credit conclusory

14   allegations, unwarranted deductions of fact, or unreasonable inferences. *Ashcroft v. Iqbal*, 129 S. Ct.

15   1937, 1949-50 (2009); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

16        Rule 12(b)(6) must be read in conjunction with the pleading requirements of Rule 8(a)(2).

17   *Sprewell*, 266 F.3d at 988. Rule 8(a)(2) requires "a short and plain statement of the claim showing that

18   the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) requires a "showing, rather than

19   a blanket assertion, of entitlement to relief . . . [w]ithout some factual allegation in the complaint, it is

20   hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the

21   nature of the claim, but also 'grounds' on which the claim rests." *Twombly*, 550 U.S. at 556 n.3. A

22   pleading must contain "only enough facts to state a claim to relief that is plausible on its face." *Id*. at

23   570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible,

24   their complaint must be dismissed." *Id*.

25        Finally, the Ninth Circuit addressed *post-Iqbal* pleading standards in *Starr v. Baca,* 652 F.3d

26   1202, 1216 (9th Cir. 2011). The *Starr* court stated, "First, to be entitled to the presumption of truth,

27   allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but

28   must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing

party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

### A. Both Shapiro's Counterclaim Against Ponomarenko and Third Party Complaint Against Summit Estate Are Defective On Their Faces For Failure To Meet The Requirements Of Rule 8 Of F. R. Civ. P.

Shapiro filed his Answer, Counterclaim to Ponomarenko, and Third-Party Claim against Summit Estate in a single docket filing. See Dkt. 56 generally. Even though it is presented as a single document in the Court's docket, Shapiro identified the three documents separately within the filing, and for each of the documents Shapiro renumbers the paragraph back at 1.[2]

Shapiro's Counterclaim against Ponomarenko fails to state a claim for relief because it does not contain a demand for the relief sought, which is expressly required under Rule 8(a)(3). Specifically, Shapiro's Counterclaim ends at Paragraph 69 immediately after the Seventh Cause of Action without any mention of the relief(s) sought for the counterclaims. Dkt 56 at 30: 22.

Shapiro's Third Party Complaint against Summit Estate is defective on its face because Shapiro failed to plead any cause of action against Summit Estate. Due to Shapiro's improper formatting of his combined Answer, Counter Complaint against Ponomarenko, and Third Party Complaint against Summit Estate, the Causes of Actions listed in the entire document are directed against only Plaintiff Ponomarenko and not Summit Estate. In other words, the Third Party Complaint against Summit Estate, Inc. literally contains no cause of actions. For this reason alone, the Third Party Complaint should be dismissed pursuant to Rule 8(a)(2) and Rule 12(b)(6) of F. R. Civ. P. Furthermore, Mr. Shapiro and PVM have waived their right to bring the third-party complaint because they failed to file a proper complaint within 14 days of serving their answer. F. R. Civ. P. 14(a)(1).

---

[2] Shapiro combined all three documents into a single docket which was accepted in the ECF system. Compounding to the problem is the fact that Shapiro restarts the paragraph numbering at 1 for each section of the document. For sake of clarity and to minimize confusion, this Motion cites Shapiro's document using the ECF Docket number, page and line rather than paragraph number as the standard citation convention when citing documents.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.  No Alter Ego Exists Between Summit Estate And Ponomarenko.**

It is expected that Shapiro will argue that all the causes of action against Ponomarenko should be valid against Summit Estate under the theory that Summit Estate is an alter ego of Ponomarenko as he has alleged in his counterclaim. Dkt. 56 at 31-33.

However, under California law, "there is no such thing as a substantive alter ego claim . . . ." *Ahcom, Ltd. v. Smeding,* 623 F.3d 1248, 1251 (9th Cir. 2010). "'A claim against a defendant, based on the alter ego theory, is not itself a claim for substantive relief, e.g., breach of contract or to set aside a fraudulent conveyance, but rather, procedural.'" *Id.* (quoting *Hennessey's Tavern, Inc. v. Am. Air Filter Co*., 204 Cal. App. 3d 1351, 1358 (2d Dist. 1988)). The court therefore interprets the individual defendants' request "to dismiss the alter ego claim" as a request to dismiss plaintiffs' claims against the individual defendants to the extent those claims rely on a theory of alter ego, rather than individual, liability. "The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests." *Mesler v. Bragg Mgmt. Co.,* 39 Cal. 3d 290, 300 (1985). Under the doctrine, "[a] corporate identity may be disregarded--the 'corporate veil' pierced--where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (5th Dist. 2000). "[C]ourts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation" "when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose." *Id.* The doctrine may be invoked when two conditions are met: (1) there is such unity of interest and ownership that the separate personalities of the individual and the corporation no longer exist; and (2) that, if the acts in question are treated as those of the corporation alone, an inequitable result will follow. *Mid–Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1212 (3d Dist. 1992). "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Neilson v. Union Bank of Cal*., N.A., 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003).

Shapiro does not even come close to alleging specifically both elements of alter ego liability,

let alone facts supporting each of the elements.  In fact, all he says is "…there existed and now exists a unity of interest and ownership between Counterdefendant [Ponomarenko] and SUMMIT ESTATE; the individuality and separateness of Counterdefendant SUMMIT ESTATE have ceased." Dkt 56 at 31:2-11. Shapiro further alleges that "…SUMMIT ESTATE was created, and thereafter continued pursuant to a fraudulent plan, scheme, and device conceived and operated by Counterdefendant, whereby income, revenue, and profits of SUMMIT ESTATE were diverted by Counterdefedant to himself. " *Id* at 32: 17-21. Shapiro's allegations merely recite the basic elements of alter ego theory, but not the facts that can support the elements of the theory itself, and as a result fail to meet the pleading requirements of Rule 8(a)(2).

Thus, all claims against Ponomarenko and Summit Estate must be treated separately as two separate entities. As further discussed, all claims brought by Mr. Shapiro should be dismissed.  To the extent the Court infers that the claims brought against Mr. Ponomarenko should be treated as claims against Summit (because the actual third-party complaint has no claims), all such claims should be dismissed as well pursuant to the heightened pleading standards of *Iqbal* and *Twombly* and for the same reasons they should be dismissed against Mr. Ponomarenko.

## C.   Shapiro's Breach of Contract Claim Should be Dismissed.

In California, the elements of a cause of action for breach of contract are (1) the existence of a contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach and (4) resulting damages to the plaintiff. *Oasis West Realty, LLC v. Goldman*, 51 Cal.4th 811, 821, 124 Cal.Rptr.3d 256, 250 P.3d 1115 (2011). "If the action is based on alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint or a copy of the written agreement must be attached and incorporated by reference." *Harris v. Rudin, Richman & Appel*, 74 Cal.App.4th 299, 307, 87 Cal.Rptr.2d 822 (1999).

### 1.   Shapiro Does Not Plead Any Facts Supporting His Claim For Breach of Contract Because Ponomarenko Had Already Fully Paid Shapiro And/Or PVM.

Shapiro alleges that Ponomarenko breached the contract when Ponomarenko failed to pay

$23,000 to Shapiro. Dkt 56 at 24: 16-20. However, Ponomarenko paid Shapiro and PVM in an amount far exceeding the $48,000 of the original agreement. See Ponomarenko Declaration ¶¶ 7-8. In fact, Ponomarenko made payments to both Shapiro and an individual who used the name Luke Gerhard Krogh, the contractor that Shapiro identified in his answer. *Id*.

Ponomarenko met both Krogh and Shapiro at the original seminar in San Francisco. Ponomarenko Decl. at ¶¶ 3-6. Ponomarenko then flew to Vegas and during the review of the contract agreement, both Krogh and Shapiro were present to answer his questions regarding the terms of the coaching services. *Id.* at ¶ 5. Shapiro then instructed Ponomarenko to make payments to Krogh on behalf of PVM, consistent with Shapiro's admission of recouping payments from Krogh. Dkt 56 at 9:12-15.

Given that Ponomarenko had paid both Shapiro and PVM more than the amount allegedly owed to Shapiro, Ponomarenko is not in breach of the agreement, and as a matter of fact had fully performed his end of the bargain. As such, Shapiro's breach of contract claim with respect to Ponomarenko should be dismissed.  In Shapiro's cross complaint, he provides no specifics allegations to substantiate his claim that Mr. Ponomarenko did not pay him.  All he states is that Ponomarenko failed to meet his financial obligations under the Agreement, and concluded he was damaged in the amount of no less than $23,000. Dkt. 56 at 24:17-20.  This is not sufficient under *Iqbal* and *Twombly* as it is essentially just a recitation of the required elements that could apply to any case.

## 2.   Summit Estate Is Not A Party To The Contract.

Simply put, Shapiro has not alleged any facts that can plausibly support his breach of contract action against Summit Estate beyond his allegations that Summit Estate is an alter ego of Ponomarenko. Absent the alter ego theory, the contract clearly states that only Shapiro and Ponomarenko are the signing parties to the contract. Given that Shapiro has not pled sufficient facts to establish the alter ego theory between Summit Estate and Ponomarenko, pursuant to *Neilson*, the breach of contract claim against Summit Estate must be dismissed.

//

//

### D.  Shapiro Fails To State A Claim For Breach of Confidentiality.

#### 1.   Shapiro Does Not Plead Any Facts Supporting His Claim For Breach of Confidentiality.

Shapiro alleges vaguely and without specifics that Ponomarenko breached the confidentiality in the agreement because he (a) contacted other students of PVM and additional individuals not currently known to PVM in an effort to disclose proprietary and confidential information, (b) contacted at least one independent contact of PVM, and/or (c) solicited potential/prospective clients of PVM. Dkt. 56 at 23:6-27.

Shapiro does not, however, allege any facts demonstrating to whom Ponomarenko disclosed the confidential information or how and when he did so. Shapiro also fails to plead facts showing that Ponomarenko used or sold any confidential information for his own account. To the extent Shapiro alleges Ponomarenko has engaged with Luke Gerhard Krogh, Krogh was one of PVM's coaches who instructed Ponomarenko in the first place. To allege breach of confidentiality when the only named person was PVM's agent is circular and as such no confidentiality has been breached based on Shapiro's allegations.

While Shapiro need not provide detailed factual allegations, Shapiro must nonetheless "provide the grounds of [his] entitle[ment] to relief . . . [which] requires more than labels and conclusions, and a formulaic recitation of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. 544 at 555. The court need not credit conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *See Iqbal*, 129 S. Ct. at 1949-50. The meager allegations Shapiro pleads in support of his breach of confidentiality claim are precisely the type of bare assertions the Supreme Court warned against and, thus, this claim should be dismissed.

#### 2.   Shapiro's Relief For Damages Is Highly Speculative.

"No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin." Cal. Civ. Code § 3301. "For breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to

result therefrom." Cal. Civ. Code § 3300. Shapiro alleges that "[a]s a proximate result of that breach [of the Confidentiality Clause], Counterclaimant has been damaged in an amount subject to proof at trial, but in any case greater than $2,400,000." Dkt. 56 at 26:5-7. Shapiro arrives at the '$2.4 million or greater' number without any reasonable certainty or clarity on how that amount for damages was ascertained. In fact, Shapiro completely fails to address the 'nature and origin' of the damages sought as required by California law. See generally, *Vestar Development II, LLC. v. General Dynamics Corp*., 249 F.3d 958 (9th Cir. 2001). In light of such a highly speculative demand for damages, Shapiro's complaint must be dismissed.

**E.   Shapiro Fails To State An Enforceable Claim For Breach of Non-Compete Provision.**

Section 16600 provides, in its entirety: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600. This provision is "an expression of public policy to ensure that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice." *Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal. App. 4th 853, 859 (1994); *see also Latona v. Aetna U.S. Healthcare Inc.,* 82 F. Supp. 2d 1089, 1093(C.D. Cal. 1999) (express purpose of § 16600 is "to prohibit contracts that restrain employees from engaging in their lawful professions").  Indeed, non-compete clauses are generally only permitted in California under very narrow exceptions such as certain transactions involving acquisitions. *Edwards v. Arthur Andersen LLP,* 44 Cal.4th 937, 942 (2008).

Shapiro's non-compete claims therefore should be dismissed on this basis alone without any further discussion required by either Ponomarenko or Summit Estate.  Moreover, there is no specific fact alleged as to how he breached the non-compete, with whom, or for what purpose.  Pursuant to *Iqbal* and *Twombly*, the cause of action should also be dismissed for this reason as well.

**F.   Shapiro Fails To State A Claim For Tortious Interference With Prospective Economic Advantage Against All Responsible Parties.**

A plaintiff bringing a claim for the tort of intentional interference with prospective economic advantage must allege: "(1) an economic relationship between the plaintiff and some third party, with

the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1153-54(2003) (internal quotation marks omitted). A complainant seeking to recover for intentional interference with prospective economic relations must "prove as part of its case-in-chief that the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.,* 11 Cal. 4th 376, 393 (1995). An act is independently wrongful "if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin,* 29 Cal. 4th at 1159. As with the interference with contract claim, the Court must consider the proposed claim against each defendant separately.

## 1. Ponomarenko Is A Party To The Contract And Therefore Cannot Be Liable to Shapiro for Intentional Interference.

Shapiro's proposed claim for intentional interference with prospective economic advantage ("Intentional Interference") against Ponomarenko fails because Shapiro cannot allege that Ponomarenko interfered with a prospective third-party economic relationship. *See Korea Supply v. Lockheed Martin,* 29 Cal. 4th at 1153. To the extent that Shapiro argues that Ponomarenko interfered with the future economic benefits of the contract, Shapiro requires Ponomarenko to be both a contracting party and a non-contracting third-party. This being impossible, the Court should find Shapiro's claim for Intentional Interference against defendant Ponomarenko futile, and dismiss this cause of action against Ponomarenko with prejudice.

## 2. Shapiro Fails to Allege Sufficient Facts Against Summit Estate for Intentional Interference.

Shapiro's counterclaim does not state facts sufficient to establish a reasonable inference that Summit Estate intentionally acted to disrupt the economic relationship between Shapiro and Ponomarenko. *See Iqbal,* 556 U.S. at 633. Rather, it contains only allegations without supporting facts including his unsupported allegations that Summit is an alter ego of Paul Ponomarenko. Further,

1  Shapiro insufficiently alleges facts to support the proposition that Ponomarenko "engaged in conduct

2  that was wrongful by some legal measure other than the fact of interference itself." *Della Penna,* 11

3  Cal. 4th at 393.  Other than his allegations that Summit Estate was an alter ego of Ponomarenko,

4  Shapiro has not offered any specific facts that Summit Estate is an independent actor whose actions

5  give rise to a claim of intentional interference of Shapiro's business.

6      Given Shapiro's counterclaims insufficiency of facts to support allegations of Intentional

7  Interference against Summit Estate, this cause of action should be dismissed as well.

8      **G.**  **Shapiro Fails To State A Claim For Breach Of The Nevada Uniform Deceptive**

9            **Trade Practices Act.**

10      Shapiro alleges that Defendants knowingly made false representations in violation of NRS

11  598.0915. Fed. R. Civ. P. 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances

12  constituting fraud or mistake shall be stated with particularity." Here, Shapiro fails to state the time,

13  place or specific content of the misrepresentations as well as the identities of each party to the specific

14  misrepresentation. See *Schreiber Distrib. Co. v. Serve-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th

15  Cir. 1986) (describing the specificity required of fraud claims). The allegations in Defendant's

16  Counterclaim do not support an inference of fraud because Shapiro merely lists the recitals for the

17  elements of the Nevada Uniform Deceptive Trade Practices Act without providing specific factual

18  allegations of fraud. Dkt 56 at 28: 26-28 through 29:1-10.  Specifically, Shapiro has failed to provide

19  sufficiently specific allegations relating to the time, place, or parties involved, demonstrating that

20  Ponomarenko has knowingly made false representations that give rise to an actionable claim under the

21  statute. Nor did Shapiro provide any sufficiently specific allegations relating to the time, place, or

22  parties involved, demonstrating that Ponomarenko disparaged Shapiro's business by false or

23  misleading representation of fact.

24      Therefore, this Cause of Action must be dismissed for failing to meet the rule 9(b) requirements

25  of a heightened pleading standard.  The allegations also, of course, fail to meet the pleading standards

26  set forth by *Iqbal* and *Twombly*.

27      **H.**  **Shapiro Fails to State A Claim For Civil Conspiracy.**

28      To state a cause of action for civil conspiracy, the complaint must allege (1) the formation and

1    operation of a conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage

2    resulting from such act or acts. *Younan v. Equifax, Inc.*, 111 Cal. App. 3d 498, 511 n.9 (1980). Thus,

3    a civil conspiracy "must be activated by the commission of an actual tort[,]" *Applied*

4    *Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994), or other wrong, *Younan*, 111 Cal.

5    App. 3d at 511 n.9. For each element of conspiracy, "[b]are allegations and rank conjecture do not

6    suffice[.]" *Choate v. Cnty. of Orange*, 86 Cal. App. 4th 312, 333 (2000) (internal quotation marks

7    omitted).

8        Shapiro's counterclaim fails to allege facts which can plausibly establish any of the elements.

9    First, with respect to the formation and operation of a conspiracy, Shapiro must allege knowledge of

10   the wrongful activity, agreement to join in the wrongful activity, and intent to aid in the wrongful

11   activity. *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1583 (1995); *see also Wasco*

12   *Prods., Inc. v. Southwall Tech., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). Shapiro must show that each

13   member of the conspiracy came to the agreement. *See Arei II Cases*, 216 Cal. App. 4th 1004,

14   1022 (2013). The conspiracy "may be inferred from the nature of the acts done, the relations of the

15   parties, the interests of the alleged conspirators, and other circumstances." *Sales Corp. v. Olsen*, 80

16   Cal. App. 3df 645, 649 (1978). But when a plaintiff alleges that a defendant is liable for a fraud-based

17   claim under a conspiracy theory, Rule 9(b) requires the plaintiff to allege with particularity facts that

18   support the existence of the conspiracy. *See, e.g.*, *Cisco Sys., Inc. v. STMicroelecs., Inc.*, 77 F. Supp.

19   3d 887, 894 (N.D. Cal. 2014).

20       There are no facts in the complaint from which the Court can draw a reasonable inference that

21   Ponomarenko or Summit Estate had knowledge of and agreed to the alleged fraud, or that that there

22   was any kind of conspiracy. First, the claim is unintelligible as to whether Shapiro pleads the cause of

23   action against Ponomarenko and/or Summit Estate, and as such the pleadings are facially insufficient

24   to plead a conspiracy to commit fraud. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir.

25   2007) (noting that allegations that "merely lump multiple defendants together" are not enough to state

26   a claim for conspiracy). The complaint does not provide a time-frame for when defendants entered the

27   agreement, describe how defendants came to reach such agreement, or indicate that each defendant

28   had knowledge of the wrongful act and intent to aid in it, and hence the elements of the formation and

operation of a conspiracy are lacking. *See Kidron*, 40 Cal. App. 4th at 1583. The allegation that "Counterdefendant engaged in a civil conspiracy with Luke Gerhard Krogh to illegally misappropriate Counterclaimant's intellectual property, business models and clients…" (Dkt. No. 56 at 29: 18-25) is conclusory and therefore insufficient to support a pleading of conspiracy under *Iqbal* and *Twombly*. *See Cisco Sys.*, *Inc.*, 77 F. Supp. 3d at 894.  Mr. Shapiro fails to articulate how they conspired, when they conspired, for what purpose, what they conspired to do, or any other meaningful specifics.  Dkt 56 at 29:13-25.  Indeed, by Mr. Shapiro's logic, anytime a customer communicates with an agent of a business, the mere act of communication is sufficient to plead conspiracy.

Nor has Shapiro adequately alleged the second element: an underlying "wrongful act," which requires a complainant to adequately plead a cause of action for a separate tort or other wrong. *See Applied Equip*. *Corp*., 7 Cal. 4th at 511. In this case, the underlying wrongful conduct has not been properly alleged by Shapiro and therefore he has not met the requisite element for this claim. Specifically, Shapiro's allegation conflates the misappropriation legal theory with fraud, and thus it is not clear which cause of action Shapiro is relying in order to establish the requisite "wrongful act" under this cause of action. Thus, the predicate "wrong" for a conspiracy claim is absent, and the claim fails. *See Applied Equip*. *Corp*., 7 Cal. 4th at 511.

Finally, "[d]amages are an essential element of a cause of action for conspiracy." *Filip v. Bucurenciu,* 129 Cal. App. 4th 825, 837 (2005). Mr. Shapiro alleges that, as a result of the conspiracy, they have been damaged in an amount "not less than $2,423,000.00 in general damages[.]" (Dkt. No. 56 at 33: 9-11.) But Shapiro has not alleged how the conspiracy leads to a $2.4 Million Dollars in damages. Ultimately, Shapiro has not connected the damages sought to any alleged conspiracy. Normally, the measure of compensatory damages for a conspiracy are the same as those for the underlying tort, only the conspiracy claim allows liability to reach co-conspirators. *See Applied Equip*. *Corp*., 7 Cal. 4th at 511 ("The damages result from the tort underlying the conspiracy."). In sum, Shapiro likewise fails to plead damages for the purposes of their conspiracy claim, and therefore the Cause of Actions should be dismissed.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   Shapiro Fails To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing.

California law implies a covenant of good faith and fair dealing in every contract. *See, e.g., Foley v. Interactive Data Corp.,* 47 Cal. 3d 654, 683 (1988) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.") (citing the Restatement (Second) of Contracts § 205). Such a covenant "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat'l Inc.,* 24 Cal. 4th 317, 349 (2000) (emphasis omitted). The implied covenant cannot "create an obligation inconsistent with an express term of the [contractual] agreement." *Nein v. HostPro, Inc.,* 174 Cal. App. 4th 833, 853 (2009); *see also Guz,* 24 Cal. 4th 317, 349-50 (stating that the implied covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement"). The breach of implied covenant claim, however, cannot merely be duplicative of the breach of contract claim. *See, e.g., Daly v. United Healthcare Ins. Co.,* 2010 WL 4510911, at *4-*7 (N.D. Cal. Nov. 1, 2010).

### 1.   Shapiro Fails To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing.

As discussed above, Ponomarenko has fulfilled his end of the bargain when he has fully paid both Shapiro and PVM for the fees of the agreement. Other than Shapiro's conclusory statements and vague allegations that Ponomarenko somehow conspired with Krogh (who is admittedly an independent contractor of PVM), Shapiro's allegations of breach of the implied covenant becomes very tenuous and do not meet the heightened pleading requirements set forth by *Twombly* and *Iqbal*.

Contrary to Shapiro's allegations, Ponomarenko faithfully made payments and followed the instructions of Shapiro and PVM's agents/instructors. *See* Ponomarenko Decl. ¶¶ 6-7. Ponomarenko made several good faith deposit payments to commence the sessions, and paid Shapiro and PVM on a regular basis during the course of the coaching sessions. *Id.*

In light of Ponomarenko's apparent performance and payments to Shapiro and PVM, which have not been refuted with any specificity whatsoever, Mr. Shapiro does not have a colorable claim of breach of the implied covenant (or breach of contract) for Ponomarenko's non-payment.

1

2. **Summit Estate Is Not A Party To The Contract And Therefore The Cause Of Action Does Not Apply To Summit Estate.**

2

3        Shapiro has not pled any facts alleging that Summit Estate is a party to the relevant ontract.

4  Under California law, the covenant of implied promise of good faith and fair dealing prevents one

5  contracting party from unfairly interfering with the other contracting's party ability to receive the

6  benefits of the contract. The rule necessarily requires an existing contract between the parties. "There

7  is no obligation to deal fairly or in good faith absent an existing contract. If there exists a contractual

8  relationship between the parties … the implied covenant is limited to assuring the compliance with

9  the express terms of the contract, and cannot be extended to create obligations not contemplated in the

10  contract." *Racine & Laramie v. Dept of Parks & Recreation*, 11 Cal.App.4th 1026, 1032 (1992).

11        As discussed above, Shapiro has not alleged any facts to establish a breach of contract against

12  Summit Estate when Summit Estate was not a party to the contract. Flowing from the discussion above,

13  the breach of implied covenant of good faith and fair dealing against Summit Estate must be dismissed.

14  **IV.    CONCLUSION**

15        For the reasons stated herein, Defendant's Cross-Complaint and Third-Party Complaint

16  Against Summit should be dismissed with prejudice.

17

18  DATED:  July 19th, 2017                    INDRAJANA LAW GROUP, A
                                               PROFESSIONAL LAW CORPORATION
19

20                            By:        **/S/** Michael Indrajana
                                         Michael Indrajana
21                                       Attorneys for Plaintiff
                                         PAUL PONOMARENKO
22                                       And Third-Party Defendant
                                         SUMMIT ESTATE INC.
23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that this document(s) filed through the ECF system will be sent electronically to
the registered participants as identified on the Notice of Electronic Filing (NEF).

3

4

Dated: July 19th, 2017                                        Respectfully submitted,

5

6                                                            INDRAJANA LAW GROUP, A
                                                             PROFESSIONAL LAW CORPORATION

7
                                                   By:           **/S/** Michael Indrajana
8                                                            Michael Indrajana
                                                             Attorneys for Plaintiff
9                                                            PAUL PONOMARENKO
                                                             And Third-Party Defendant
10                                                           SUMMIT ESTATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28